## HENRY M. HOLBROOK and others *v.* ELIZABETH MIX.

A note was endorsed by the defendant for the accommodation of the makers, who delivered it to the owner of a ship in payment of the price of their passage therein to California. Such owner transferred the note, without endorsement, to the plaintiffs, who, at his request, credited the amount thereof to the owner on his account, for premiums of insurance, previously paid for him by them, on the vessel for her contemplated voyage. At the time of the transfer, the plaintiffs knew that the owner had obtained insurance upon the said ship for the voyage; that payment of the note would be contested mainly on the ground of the ship's bad character; and it was intimated to them that a suit against the endorser would probably be necessary. They were also at the same time advised to send for the policies of insurance, as "legal proof" of the qualities of the ship. It was apparent, that the defendant had been the immediate endorser of the note to the ship's owner, who in transferring it to the plaintiffs, offered to collect the same for their account, and stated as his reason for not endorsing it, that payment would probably be contested. In an action on the note, the endorser interposed as a defence, that the note was given upon fraudulent representations of the owner as to the ship's character.

*Held*, that the plaintiffs, upon taking the note, had sufficient notice to put them upon inquiry; that not having made any inquiry, they acted at their peril; and that evidence of fraud by the ship's owner in originally obtaining the note, was competent for the purpose of exempting the endorser from liability.

Where fraud is set up as the defence to a promissory note, held by a plaintiff, to whom it was transferred without notice, but on account of a precedent debt due

Holbrook v. Mix.

to him by the fraudulent transferrer, the plaintiff is not a holder for value, in such a sense as excludes proof of the fraud.

*It seems,* that if a debtor, concealing the defects of a note tainted with fraud, transfer it to his creditor, and induce the, latter to pass the same to his credit, the debtor remains liable to the creditor for the original debt.

A defendant, having made the plaintiff a witness, cannot impeach his credibility, nor contradict him for the mere purpose of impeachment; but where, in an action on a note, such witness testified that he took the note in question, without notice of defect, it was *held,* that by his further examination or otherwise, his knowledge of circumstances amounting, in legal effect, to sufficient notice, might be shown.

This case came up upon the plaintiffs' appeal from a judgment entered against them, at special term, upon the verdict of a jury. The facts are fully set forth in the opinion.

*James T. Brady,* for the plaintiffs.

I. The testimony as to fraud on the part of Beach should not have been received. 1st. The testimony of Holbrook being wholly uncontradicted, established that the note in suit was passed to plaintiffs in such a way, as that they had a legal right to recover upon it as *bona fide* endorsees. a. It was not an accommodation, but a *business* note. It was given in consideration of the agreement by Beach to carry the makers to California. (*Dane* v. *Schutt and another,* 2 Denio, 621.) b. It was received and credited, by express agreement, on a debt which M. Y. Beach owed the plaintiffs. (*Bank of Salina* v. *Babcock,* 21 Wend. 499; *Bank of Sandusky* v. *Scoville,* 24 Wend. 115; *Stalker* v. *McDonald,* 6 Hill, 93.) c. Being received without his endorsement, it was, by operation of law, a payment. (*Chitty on Contracts,* 767, and notes.) d. Holbrook expressly disclaims notice of any fraud in obtaining the note, or of any opposition to be made to its payment, except on the ground that the "Apollo" was not a good ship. This is not enough to defeat his claim as the owner of a business note. He had no notice of any rescission of the contract under which the note was given. e. The defendant having elected to examine Holbrook on the question of notice, is concluded by his answers.

II. His honor erred in the charge he gave, in holding as matter of law, that the plaintiffs were not *bona fide* holders on the facts which appeared before him.

III. The verdict is against law and evidence, and the right of the case.

*James W. Gerard,* for the defendant.

I. The judge correctly admitted the evidence offered by the defendant, of false representations by Beach, and properly charged upon the same subject.

1. The plaintiffs were not the *bona fide* holders of the note *for value, without notice,* and were, therefore, in the same position before the court as if the suit were brought by Moses Y. Beach himself.

2. The note was received for an *antecedent* debt. (*Stewart* v. *Small,* 2 Barbour's S. C. R. p. 559, and affirmed in court of appeals.)

3. The plaintiffs, through their *correspondence, had notice,* not only that the *payment* of the note would *be contested* by the parties to it, but of the *grounds* of resisting payment.

4. It was for the judge to decide upon these two *grounds,* the facts being undisputed, and *either* being in favor of the defendant, properly admitted the defendant's testimony, and justified the charge.

II. A creditor, taking the note of a third person from his debtor, for a pre-existing debt, is not payment or extinguishment of such debt; but if the note is not paid, the creditor has his original claim against his debtor. (*Porter* v. *Talcot,* 1 Cow. 359; *Raymond* v. *Merchant,* 3 Cow. 147; *Monroe* v. *Hogg,* 5 Denio, 360.)

BY THE COURT. WOODRUFF, J.—The defendant in this case endorsed the note, upon which the action is brought, for the accommodation of the makers, by whom it was delivered to Moses Y. Beach. Mr. Beach, being indebted to the plaintiffs for premiums of insurance paid by them, enclosed the note to them,

Holbrook v. Mix.

in a letter, requesting them to "pass the note to his credit, on account," and adds, "as I understand there will be a disposition to *contest it* on the part of *Mrs. Mix*, I have not endorsed it over to you. If you wish, I will attend to the collection of it, on your account, on receiving the proper authority, *by suit*, *if necessary*. As the ground for contesting it will mainly be the bad character of the ship Apollo, it would be well for you to forward, in good season, the policies of insurance you have obtained upon her, and upon cargo sent by her, or some legal certificate of their having issued—probably nothing but the policies would be legal proof."

The plaintiffs, thereupon, deducting the interest for the unexpired term of payment, gave Mr. Beach credit for the residue, sent him a receipt therefor, acknowledging the receipt of so much money, *on account*, and wrote to him further, "we have passed to your credit $498 06, as cash, being the proceeds of the note of $500, less the interest off." The plaintiffs' letter shows that the insurance effected by the plaintiffs, for Beach, was upon the ship Apollo and her cargo, on her voyage to San Francisco, in California. The testimony of one of the plaintiffs is, that "the proceeds of the note were received, and credited in part payment of the indebtedness of Mr. Beach to the plaintiffs, for insurance," &c., or, as he otherwise expressed it, "the note was received in part payment of Moses Y. Beach's indebtedness to us."

Under these circumstances, the defendant proposed to show, that the note was made by the drawers, and endorsed by her to M. Y. Beach, for the passage of the makers from New York to San Francisco, in the ship Apollo, owned by him; and that the making and endorsement of the note were procured by the false and fraudulent representations of Beach, in regard to the qualities of the ship Apollo, in which the makers had taken passage; and that, on the discovery of the falsity of such representation, the makers refused to go by the ship Apollo, but took passage in another vessel.

The jury, by their verdict, have found that the note was procured by the fraud and false representations alleged; and, al-

though the testimony, as it appeared to me on the trial, would have warranted the contrary result, we must, on this appeal, assume that fact to be well found.

The only question, then, before us for inquiry is, whether such fraud was under the circumstances above stated admissible in evidence to defeat the plaintiffs' recovery.

The same question is also raised by the plaintiffs' exception to the charge of the court, "that the plaintiffs are not *bona fide* holders for value so as to be entitled to recover, if the party from whom they received it procured it by such a fraud as would constitute a good defence if he had brought the action in his own name."

The plaintiffs received this note in payment of a debt due from Moses Y. Beach; and if this court is bound to regard as binding authority the opinions of judges of the court of errors, and the late supreme court, it seems to me we ought not to hesitate in affirming this judgment.

Chief Justice Spencer, in *Bay* v. *Coddington*, 20 Johns. 651, says: "I understand by usual course of trade, that the holder takes them in his business for a *debt contracted at the time.*' That the cases in which the holder of a note was deemed a *bona fide* holder for value, were where the holding was for a *present* consideration paid. (See, also, Chancellor Kent, and the other judges in that case, in 20 Johns. and in 5 Johns.) Chief Justice Savage, in *Rosa* v. *Brotherson*, 10 Wend. 86, says, "the holder of a note who receives it in payment of a precedent debt, or responsibility incurred, takes it subject to all the equities existing between the original parties."

And again he says, in *Payne* v. *Cutter*, 13 Wend. 606, "the maker of a negotiable note may set up any defence, &c., unless the holder has advanced money or property, or incurred liability upon the credit of the note." In the recent case of *Stalker* v. *McDonald*, 6 Hill, 96, this subject is discussed at great length, and it is there treated as the settled law of this state, that the holder of a note received in payment of a pre-existing debt, who has not *relinquished any security, upon the*

*faith* of the transfer, is in no better condition than he from whom he received it.

This subject has been much discussed, and the opinions expressed by the judges of our courts have been much controverted. (See *Swift* v. *Tysen*, 16 Peters' U. S. R. 15; Story on Promissory Notes, § 195, and notes; *Allaire* v. *Hartshorne*, 1 Zabriskie N. J. R.) There is no pretence that in the present case the plaintiffs paid any thing of value for the note, and the only claim is, that by receiving it, unaccompanied by the endorsement of Beach, and placing it unqualifiedly to his credit, they lost all right of action against him; they canceled his indebtedness, and *so* they parted with security upon the faith of the note. This is a begging of the question. If by reason of the fraud of Beach, a recovery by the plaintiffs is defeated, the plaintiffs will have the same right to recover against Beach they had before the transfer. If he passed to them a note which was tainted with fraud, and induced them to pass it to his credit, concealing from them its defects, I cannot doubt that he is liable for the original debt to them. (*Fulton Bank* v. *Phenix Bank*, 1 Hall's Supr. Ct. R. 574.)

Whatever views I might entertain of the question, whether a precedent debt is alone a sufficient consideration to protect a transferee, without notice, from any impeachment of a note for either want or failure of consideration or fraud therein, I feel bound by the decisions in this state to say, that where *fraud* is set up as the defence, such transferee is not a holder for value in such a sense as excludes proof of the fraud.

But if this question were doubtful, the circumstances under which this note was received, deprive the plaintiffs of all claim to be deemed *bona fide* holders for value, *without notice* of the fraud found by the jury.

The fraud complained of consisted in exaggerated representations of the good qualities and safety of the ship Apollo, made to induce the makers of the note to take passage therein to San Francisco, and give the note in question, endorsed by the defendant as further security, for the passage money.

Had the plaintiffs, at the time they received the note in question, notice of this fraud ?

The following facts are proved by the oath of one of the plaintiffs, and may be taken against them as true :—The plaintiffs knew that M. Y. Beach was obtaining insurance upon the ship Apollo and her cargo, on her voyage from New York to San Francisco, in California; that payment of the note in question would be contested by the defendant, and that the bad character of the ship Apollo would be the main ground of defence; and it was clearly intimated to them that a suit against the defendant would be necessary. They were advised to send to New York the policies of insurance, as "legal proof" of the quality and character of the ship. They saw that Mrs. Mix (the defendant) was the immediate endorser of the note to Beach. These circumstances fairly apprised the plaintiffs that the bad character of the ship, in reference to, or for the purposes of that *identical* voyage, was the subject of complaint by the defendant, otherwise those *particular* policies would not have been deemed important; and that the defendant (Mrs. Mix) had some interest in, or connection with that voyage, and that the note related to some transaction belonging to that voyage.

The reason given for not endorsing it, viz., that it would be contested, was, to any cautious mind, tantamount to saying, I probably cannot collect it, and I wish to place it in the hands of some one who will appear to be a holder, entirely independent of me, and who can show his title without asserting title in me.

The offer to collect it for plaintiffs' account; the avowed intention not to endorse; and especially the fact, to which the court cannot be blind, that no man of ordinary prudence takes a note which he knows he must collect by *suit*, paying its expenses and abiding its contingencies, unless he has some motive or inducement out of the usual course of trade ; are all circumstances of suspicion.

Under all these circumstances, it seems to me wholly unnecessary to multiply words in showing, that if the plaintiffs

had not notice of the very fraud imputed to Mr. Beach, they had notice enough to put them upon inquiry—notice *with* which no man of ordinary prudence would for one moment have seriously contemplated the taking of the note, unless he bought it at a discount upon speculation.

The note *was* defended on the ground assigned, viz., the bad character of the ship Apollo, and it needed only the slightest exercise of prudence, by plaintiffs, in inquiring *how* the validity of the note depended upon that question, to have informed them that the defendant alleged that the note was procured by misrepresentations on that subject.

Justice Story says, that it will be sufficient to let in a defence in a case like the present, " if the circumstances are of such a strong and pointed character as necessarily to *cast a shade* upon the transaction, and to put the holder on inquiry." (Vide Story's Prom. Notes, § 197, and notes and authors cited.)

Chitty, pp. 278–9, gives the rule much more strongly against the plaintiffs. He says, in substance, that it will be sufficient if the circumstances under which the plaintiffs took the note be such as " ought to have excited the suspicion of a prudent and careful man." (See cases cited in notes.)

Under either rule the plaintiffs must fail.

The case of *Brown* v. *Taber*, 5 Wend. 566, rests upon circumstances far less marked in their character than the present, and yet the plaintiff in that case was held affected with notice. (See *Cone* v. *Baldwin*, 12 Pick. 545.)

It was suggested on the argument, that if the plaintiffs *had* inquired, they might have failed to gain information of the precise defence.

If they were not in fact sufficiently apprised of it, and had made inquiry with reasonable prudence, without success, it might, with some plausibility, be urged that they had done all that could be required, and were protected. But not making *any* inquiry, they acted at their *peril*.

It was further suggested, that the defendant made the plaintiff her witness, and he having answered, " that he did not know nor hear, at or before he obtained the note, that it was

procured by fraud or false representations, the defendant was bound by this answer, and could not insist that he had notice.

This is not so. Having made the plaintiff her witness, the defendant could not impeach his credibility, nor contradict him for the mere purpose of impeachment; but she had a right to show, by his own further examination or otherwise, that, although he had no direct knowledge or information of the alleged fraud, he had notice enough to put him on inquiry. Indeed, the whole examination of the plaintiff shows this, and the *whole* must be read together to ascertain what the witness really intended to testify.

The result of such reading is, that although he did not actually know, and had not heard that the note was obtained by fraud, yet he had knowledge of all the circumstances which are above mentioned, as in legal effect amounting to knowledge.

This is no impeachment of the witness; it is taking his entire testimony together, and giving credit to the whole of it.

I think no error was committed on the trial furnishing any ground for reversing the judgment.

Judgment affirmed.